**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **JOHN DOE**,<br><br>Plaintiff,<br><br>v.<br><br>**METROPOLIS TECHNOLOGIES, INC.**<br><br>Defendant. | <br><br>**CASE NO.:**<br><br>**JURY DEMAND** |

# COMPLAINT

NOW COMES Plaintiff JOHN DOE ("Plaintiff"), by and through undersigned counsel, bringing this Complaint and Jury Demand against Defendant METROPOLIS TECHNOLOGIES, INC. ("Defendant"), and alleges as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981.
2. Plaintiff is a Muslim Palestinian-American attorney whom Defendant underpaid relative to similarly situated attorneys, subjected to discriminatory comments and scrutiny, excluded from a major legal assignment expressly because of his Palestinian identity, and ultimately selected for termination in April 2025.

## JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States, including Title VII and 42 U.S.C. § 1981.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to the filing of Plaintiff's Title VII claims have been satisfied.
6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and harassment based on race, religion, and national origin, as well as retaliation and unequal terms and conditions of employment.
7. The EEOC assigned Plaintiff's charge Charge No. 494-2025-03801.
8. The EEOC issued Plaintiff a Notice of Right to Sue on May 27, 2026.
9. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.
10. The allegations in this Complaint are within the scope of, like or reasonably related to, and reasonably expected to grow out of the allegations in Plaintiff's EEOC charge and the ensuing investigation.

## PARTIES

11. Plaintiff **John Doe** is an adult resident of Davidson County, Tennessee. Plaintiff is Muslim, Palestinian-American, and a licensed attorney.
12. Plaintiff brings this action under the pseudonym "John Doe" and will separately move for leave to proceed pseudonymously. Plaintiff will disclose his identity to the Court as directed, and to Defendant through their counsel. Defendant has known Plaintiff's identity throughout the employment relationship and EEOC proceedings and therefore will not be prejudiced by Plaintiff's use of a pseudonym in this action.

13. Defendant **Metropolis Technologies, Inc.** is a Delaware corporation that conducts substantial business in Tennessee and employed Plaintiff during the period relevant to this action.

14. At all relevant times, Defendant was an "employer" within the meaning of Title VII because it employed fifteen or more employees during the applicable statutory period.

15. At all relevant times, Defendant acted through its officers, executives, managers, human resource personnel, legal-department leaders, employees, and agents, whose acts and omissions were undertaken within the scope of their authority and are attributable to Defendant.

**FACTUAL ALLEGATIONS**

16. Plaintiff began working for Defendant in or around April 2023 and remained employed until Defendant terminated his employment in or around April 2025.

17. Plaintiff was qualified for his position, performed his assigned duties competently, and met Defendant's legitimate performance expectations.

18. Although Plaintiff was a licensed attorney, Defendant hired him under the title of "Paralegal."

19. Defendant represented to Plaintiff that the paralegal title resulted from internal leveling issues and would be corrected in the near future.

20. Despite the paralegal title, Defendant regularly assigned Plaintiff duties and responsibilities appropriate for a licensed attorney, including drafting and negotiating agreements and providing legal advice on complex company matters.

21. Plaintiff repeatedly raised the mismatch between his title, responsibilities, and compensation throughout his employment.

22. On or about October 24, 2023, Plaintiff specifically documented his concern that he was performing attorney-level work without an appropriate attorney title or corresponding compensation.

23. In response, Defendant told Plaintiff that he could present himself externally as an attorney but would not be given the appropriate internal title or compensation at that time.

24. Plaintiff also raised his compensation inequity with his manager and with company leadership, including the Chief Financial Officer, to whom Plaintiff indirectly reported.

25. Throughout the course of his employment, Plaintiff was informed that Defendant's Chief Financial Officer, General Counsel, and Associate General Counsel were aware of his compensation disparity, yet Defendant failed to correct it.

26. In 2024, as part of a 'promotion,' Defendant eventually changed Plaintiff's title to Junior Corporate Counsel and increased his salary to approximately $95,000.

27. Even after the title change, Plaintiff's salary remained materially below the compensation paid to similarly situated attorneys in comparable in-house roles, including attorneys within the company.

28. For the fiscal year 2023, Defendant denied Plaintiff the standard annual bonus paid to other employees and instead provided him an arbitrary payment of approximately $2,500.

29. When Plaintiff requested the governing bonus policy and an explanation of his payment, Defendant's leadership responded that a formal bonus policy 'might not even exist.'

30. Upon information and belief, similarly situated attorneys outside Plaintiff's protected classes received more favorable bonus payments and compensation.

31. On or about June 13, 2023, a Human Resources employee referred to Plaintiff as "Osama" in a professional setting and in the presence of others.

32. The “Osama” remark was Islamophobic and racially and ethnically charged. It invoked a stereotyped association between Plaintiff’s Muslim faith and Palestinian or Middle Eastern identity and terrorism.

33. The remark humiliated Plaintiff, caused emotional distress, and communicated that discriminatory stereotyping was tolerated even within Defendant’s Human Resources Department.

34. Throughout his employment, Plaintiff opposed and complained about what he reasonably believed were discriminatory disparities in his title, compensation, bonus, and other terms and conditions of employment.

35. Plaintiff believed that the disparities in his title, pay, and compensation were attributable to his Palestinian background and Muslim religion.

36. Defendant knew of Plaintiff’s complaints through his communications with his manager and senior leadership, including the documented October 24, 2023 complaint and subsequent discussions.

37. After Plaintiff raised these concerns, Defendant continued to deny him equal title and compensation, denied him a standard bonus, restricted his work opportunities, refused routine reimbursements, and subjected him to continued unequal treatment.

38. Defendant’s senior leadership was aware of Plaintiff’s Palestinian identity and background.

39. In or around October 2023, Defendant’s Chief Executive Officer sent a company-wide communication acknowledging that Defendant employed individuals from both Israel and Gaza. Plaintiff was one of the employees to whom the CEO was referring.

40. On or about January 2025, Defendant announced it was acquiring Oosto, an Israeli facial recognition company formerly known as AnyVision.

41. Upon information and belief, Oosto powered an Israeli military surveillance project of Palestinians throughout the occupied West Bank.[1]

42. In connection with Defendant's acquisition of Oosto, members of Defendant's legal team were assigned to provide legal support for the transaction and related integration efforts.

43. Plaintiff was qualified to perform work relating to the Oosto acquisition and had previously performed comparable, high-level legal work for Defendant in connection with another acquisition.

44. Despite Plaintiff's qualifications and prior experience, Defendant's leadership expressly informed Plaintiff that he would not be assigned work relating to the Oosto acquisition.

45. Defendant contacted Plaintiff specifically to discuss how he felt about the Oosto acquisition in light of his Palestinian background and, during that same conversation, informed him that he would not be assigned any work relating to the acquisition.

46. By excluding Plaintiff from the acquisition, Defendant denied him meaningful participation in a major legal matter, professional development, visibility to senior leadership, and experience available to similarly situated legal employees outside his protected classes.

47. In April 2025, Defendant selected Plaintiff for termination and characterized the termination as part of a reduction in force.

48. Defendant has asserted that Plaintiff was terminated as part of a reduction in force, but that assertion does not explain why Plaintiff had already been misclassified, underpaid,

---

[1]See *Why did Microsoft fund an Israeli firm that surveils West Bank Palestinians?* NBC News, 2019 available at https://www.nbcnews.com/news/all/why-did-microsoft-fund-israeli-firm-surveils-west-bank-palestinians-n1072116; (last accessed August 24, 2026).

denied equal bonus compensation, denied reimbursements, and expressly excluded from a major acquisition because of his protected identity.

49. Upon information and belief, Defendant retained similarly situated legal employees outside Plaintiff's protected classes and did not apply neutral, consistently documented criteria in selecting Plaintiff for termination.

50. Defendant's asserted reduction-in-force explanation was incomplete, pretextual, and not the full or true reason for its treatment and termination of Plaintiff.

51. Upon information and belief, the department was understaffed, as Plaintiff took on added responsibility after the acquisition.

52. Upon information and belief, Defendant subsequently hired another attorney to perform substantially similar work.

53. Upon information and belief, Defendant had approved two additional headcount positions for the legal team prior to the 'reduction in force'.

54. Defendant's subsequent posting of multiple attorney openings further undermines its assertion that Plaintiff's termination was necessitated by a 'reduction in force'.

55. In April 2025, Plaintiff submitted a written severance request that expressly raised his concerns regarding discrimination, harassment, unequal compensation, exclusion from work, and other unlawful treatment.

56. Defendant declined to investigate or meaningfully address Plaintiff's discrimination complaints and failed to provide an adequate remedy.

57. In its response to Plaintiff's EEOC charge, Defendant relied principally on generic policy language and the reduction-in-force narrative while failing to substantively deny or explain Plaintiff's allegations of discrimination, including exclusion from the Oosto acquisition, compensation disparity, bonus disparity, and expense denials.

58. Defendant's treatment of Plaintiff was motivated, at least in part, by his Arab race and ancestry, Palestinian national origin, Muslim religion, and his opposition to discriminatory treatment.

59. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of employment, wages, bonuses, benefits, professional opportunities, and future earning capacity, as well as emotional distress, humiliation, anxiety, reputational harm, and other compensable injuries.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**(Race, National Origin, Religion Based Discrimination)**

60. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

61. Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, privileges, assignments, and termination because of race, national origin, or religion.

62. Plaintiff is Palestinian, Arab, and Muslim. Palestinian ancestry and ethnic characteristics place him within a protected racial and ethnic group.

63. Defendant knew and perceived Plaintiff to be Palestinian, Arab, Middle Eastern, and Muslim.

64. Plaintiff was qualified for his position and performed his duties satisfactorily.

65. Defendant subjected Plaintiff to materially adverse and unequal treatment, including misclassification, underpayment, denial of equal bonus compensation, exclusion from a major legal assignment, denial of routine expense reimbursements, and termination.

66. Defendant's Human Resources employee referred to Plaintiff as "Osama," a racially, ethnically, and religiously charged remark associating Plaintiff's Palestinian, Arab, Middle Eastern, and Muslim identity with terrorism.

67. Defendant's leadership expressly excluded Plaintiff from work relating to the Oosto acquisition because of his Palestinian identity, demonstrating that Defendant used Plaintiff's protected race and national origin as criteria in allocating valuable work opportunities.

68. Similarly situated employees outside Plaintiff's protected racial, national-origin, and religious groups were treated more favorably with respect to title, compensation, bonuses, work assignments, reimbursements, retention, and other terms and conditions of employment.

69. Defendant's asserted business reasons were false, incomplete, inconsistently applied, and pretextual.

70. Plaintiff's race, Palestinian national origin, and Muslim religion were motivating factors in Defendant's adverse employment actions.

71. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered economic and non-economic damages.

72. Defendant acted intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**(Retaliation)**

73. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

74. Title VII prohibits an employer from retaliating against an employee because he opposed practices made unlawful by Title VII or complained of discrimination.

75. Plaintiff engaged in protected activity by repeatedly opposing and complaining about discriminatory disparities in his title, compensation, bonus, assignments, reimbursements, and other terms and conditions of employment.

76. Plaintiff's protected activity included his documented October 24, 2023 complaint, subsequent complaints to his manager and senior leadership, and his April 2025 written complaint regarding discrimination and harassment.

77. Defendant knew of Plaintiff's protected activity.

78. After and because of Plaintiff's protected activity, Defendant continued to deny him equal title and compensation, denied him equal bonus compensation, restricted his work assignments, refused routine reimbursements, subjected him to heightened scrutiny, selected him for termination, and refused to investigate or remedy his complaints.

79. The timing, sequence, and escalating nature of Defendant's actions support an inference of retaliatory motive.

80. Defendant's proffered reasons for its actions were false, incomplete, inconsistently applied, and pretextual.

81. Plaintiff's protected activity was a but-for cause of Defendant's retaliatory actions.

82. Defendant's actions would dissuade a reasonable employee from opposing discrimination or participating in protected activity.

83. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered economic and non-economic damages.

84. Defendant acted intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

## COUNT III
**Hostile Work Environment in Violation of Title VII**
**42 U.S.C. § 2000e et seq.**
**(Race, National Origin, Religion-Based Hostile Work Environment)**

85. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

86. Title VII prohibits an employer from subjecting an employee to a hostile work environment because of race, national origin, or religion.

87. Plaintiff was subjected to unwelcome harassment because of his Palestinian ancestry, Arab race, and ethnic characteristics.

88. The harassment included the "Osama" remark by Human Resources, discriminatory scrutiny, persistent unequal treatment, and an explicit race-based exclusion from the Oosto acquisition.

89. The discriminatory conduct was carried out or tolerated by Human Resources personnel and company leadership.

90. The explicit use of Plaintiff's Palestinian identity to deny him access to a major legal matter reinforced the message that his race and ethnicity made him unacceptable for meaningful participation in Defendant's legal work.

91. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, humiliating, hostile, and offensive working environment.

92. Defendant knew or should have known of the discriminatory harassment and failed to take prompt and effective corrective action.

93. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, humiliation, anxiety, loss of professional opportunity, and other damages.

94. Defendant acted intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

**COUNT IV**
**Violation of 42 U.S.C. § 1981**
**(Race- and Ethnicity-Based Discrimination)**

95. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

96. Section 1981 guarantees all persons within the United States the same right to make and enforce contracts and to enjoy the benefits, privileges, terms, and conditions of contractual relationships as are enjoyed by white citizens.

97. Section 1981 prohibits intentional discrimination based on race, ancestry, and ethnic characteristics in the making, performance, modification, and termination of employment relationships.

98. Plaintiff's Palestinian ancestry and ethnic characteristics are protected under 42 U.S.C. § 1981.

99. Plaintiff entered into and performed a contractual employment relationship with Defendant.

100. Plaintiff performed his duties competently and met Defendant's legitimate expectations.

101. Defendant intentionally interfered with Plaintiff's employment relationship by misclassifying and underpaying him, denying equal bonus compensation, restricting assignments, denying reimbursements, and terminating the relationship because of Plaintiff's Palestinian ancestry, Arab race, and ethnicity.

102. Defendant's leadership expressly excluded Plaintiff from the Oosto acquisition because of his Palestinian identity.

103. Similarly situated employees outside Plaintiff's protected racial and ethnic group were treated more favorably in the enjoyment of their employment relationships.

104. Defendant's asserted reasons were false, incomplete, and pretextual.

105. Plaintiff's race, ancestry, and ethnic characteristics were a but-for cause of Defendant's adverse actions.

106. As a direct and proximate result of Defendant's conduct, Plaintiff suffered economic and non-economic damages.

107. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

**COUNT V**
**Hostile Work Environment in Violation of 42 U.S.C. § 1981**
**(Race- and Ethnicity-Based Hostile Work Environment)**

108. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

109. Section 1981 prohibits racial and ethnic harassment that alters the terms and conditions of an employment relationship.

110. Plaintiff was subjected to unwelcome harassment because of his Palestinian ancestry, Arab race, and ethnic characteristics.

111. The harassment included the "Osama" remark by Human Resources, discriminatory scrutiny, persistent unequal treatment, and explicit exclusion from the Oosto acquisition because he was Palestinian.

112. The discriminatory conduct was carried out or tolerated by Human Resources personnel and company leadership.

113. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, humiliating, hostile, and offensive working environment.

114. Defendant knew or should have known of the harassment and failed to take prompt and effective corrective action.

115. Plaintiff's race, ancestry, and ethnic characteristics were a but-for cause of the hostile treatment.

116. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered economic and non-economic damages.

117. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

**COUNT VI**
**Violation of 42 U.S.C. § 1981**
**(Retaliation for Opposing Race- and Ethnicity-Based Discrimination)**

118. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

119. Section 1981 prohibits retaliation against an employee because he opposed race- or ethnicity-based discrimination affecting an employment relationship.

120. Plaintiff engaged in protected activity by opposing and complaining about discriminatory disparities in his title, compensation, bonus, assignments, reimbursements, and other terms and conditions of employment based on his Palestinian ancestry and ethnicity.

121. Defendant knew of Plaintiff's protected activity through Plaintiff's documented complaints to his manager and senior leadership and his April 2025 written complaint.

122. After and because of Plaintiff's protected activity, Defendant continued to deny Plaintiff equal terms and conditions of employment, restricted his work opportunities, denied reimbursements, selected him for termination, and refused to investigate or remedy his complaints.

123. Defendant's stated reasons were false, incomplete, inconsistently applied, and pretextual.

124. Plaintiff's protected activity was a but-for cause of Defendant's retaliatory actions.

125. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered economic and non-economic damages.

126. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award all relief available under Title VII and 42 U.S.C. § 1981, including but not limited to:

a. Front pay;

b. Back pay, lost compensation, lost bonuses, lost benefits, unreimbursed business expenses, and other actual damages;

c. Compensatory damages, including damages for emotional distress, humiliation, and loss of professional opportunity;

d. Punitive damages;

e. Pre- and post-judgment interest;

f. Reasonable attorneys' fees and costs;

g. Declaratory, injunctive, and other equitable relief as permitted by law; and

h. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: *<u>/s/ Waleed Naser</u>*
Waleed Naser, Esq.
TNBPR No. 039790
Naser Legal, LLC
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
Office: (312) 248-2501
Direct: (872) 265-8490
waleed@naserlegal.com

Attorney for Plaintiff

Date: August 24, 2026